*NOT FOR PUBLICATION*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MIGUEL A. SOTO,

          Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of
Social Security,

          Defendant.

Civil Action No. 21-02816 (FLW)

**OPINION**

**WOLFSON, Chief Judge:**

    Miguel A. Soto ("Plaintiff") appeals from the final decision of the Acting Commissioner of Social Security, Kilolo Kijakazi ("Defendant"), denying Plaintiff's application for disability under Title II of the Social Security Act (the "Act"). After reviewing the Administrative Record ("A.R."), the Court finds that the Administrative Law Judge's ("ALJ") decision was based on substantial evidence, and accordingly, the ALJ's decision is **AFFIRMED**.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

    Plaintiff, born on September 4, 1960, was 51 years old on his alleged disability onset date of November 30, 2011.[1] On June 17, 2013, Plaintiff filed a Title II application for a period of disability alleging pain arising from a back injury. (A.R. 168-69; 184.) The application was denied initially and on reconsideration. (A.R. 69-91; 92-95.) Plaintiff then filed a written request for a hearing before an administrative law judge, which was held on March 6, 2015 ("March Hearing"). (A.R. 41-68.) On May 26, 2015, the ALJ issued a written decision, finding that Plaintiff was not

---

[1] To be clear, Plaintiff filed a subsequent application for disability on March 7, 2017, and he was found disabled as of May 27, 2015 (A.R. 500.) Therefore, it appears that Plaintiff is currently receiving disability benefits, and the relevant period in this case is November 30, 2011 to May 26, 2015. (A.R. 500.)

disabled. (A.R. 22-40.) Plaintiff requested review of the ALJ's decision by the Appeals Council, which was denied on November 30, 2016. (A.R. 1-9.)

Plaintiff then filed a Complaint in this District, and the Hon. Kevin McNulty, U.S.D.J., vacated the ALJ's decision and remanded the matter on January 10, 2018. (A.R. 592.) The court found that the "only issue requiring attention on remand is Dr. [Bruce R.] Rosenblum's opinion that Mr. Soto will likely be absent from work for four days or more per month." *Soto v. Comm'r of Soc. Sec.*, No. 17-89, 2018 WL 355138, at *7 (D.N.J. Jan. 10, 2018) (hereinafter "*Soto I*"). Specifically, as to this issue, Plaintiff argued that the ALJ did not consider Dr. Rosenblum's opinion that he will likely miss more than four days of work per month. *Id.* at *5. The court noted that this opinion was found in Dr. Rosenblum's "Medical Source Statement of Ability to Do Work–Related Activities," which was a form consisting mostly of check boxes with small areas for comments. *Id.* Although the court acknowledged that these forms are typically attributed minimal weight, it also explained that when the ALJ's determination conflicts with the opinion of a treating physician, the ALJ must make clear on the record his or her reasons for rejecting the opinion of the treating physician. *Id.* at *6. Thus, because the ALJ did not address the absenteeism issue or offer any reason for rejecting the opinion of Dr. Rosenblum, the court found that the ALJ must address this issue on remand. *Id.* The District Court further stated that it "did not take a position, express or implied, as to whether there should or should not be a finding of disability on remand; that is for the SSA to determine." *Id.* at *7.

After remand, a second hearing occurred on July 13, 2018 ("July Hearing"), at which time the ALJ considered only the discrete issue of Dr. Rosenblum's opinion that Plaintiff would likely be absent from work for four days, or more, per month. On November 7, 2018, the ALJ, again, determined that Plaintiff was not disabled under the relevant statutes. (A.R. 494-516.) Plaintiff

requested review of the ALJ's decision by the Appeals Council, which was denied on December 16, 2020.

### A.   <u>Review of Medical Evidence</u>

#### i.   *Physical Impairments*

Plaintiff's back issues arose in April 2010, when he underwent lumbar decompression surgery. (A.R. 253; 384.) Neurologist Bruce R. Rosenblum, M.D. released Plaintiff back to work effective June 21, 2010, for light duty, *i.e.*, lifting no more than 20 pounds. (A.R. 300.) Around that same time, Plaintiff stated that he could live with his condition and would return to work on December 12, 2011; however, he indicated that he would need to look for a job because his company had closed and relocated (A.R. 294.)

On March 15, 2012, while still out of work, Plaintiff was involved in a car accident, which exacerbated his back issues. (A.R. 293.) On March 26, 2012, he reported to Dr. Rosenbaum that he had been experiencing low back pain since the day following the accident, and several weeks later, on April 17, 2012, Dr. Rosenblum reported that Plaintiff had a positive straight leg raising test at 45 degrees on the right leg. (A.R. 292.) As a result, Dr. Rosenbaum recommended physical therapy. (*Id.*)

On September 4, 2012, pain management physician, Carmen Quinones, M.D., examined Plaintiff, at which time he reported sharp pain in his mid-lower back. Plaintiff attempted physical therapy for four weeks, but he did not find relief from his pain. (A.R. 341.) However, Dr. Quinones reported that straight leg raising tests performed on Plaintiff were negative bilaterally and his sensation to light touch and pinprick in the lower extremities was intact. Further, Plaintiff's muscle strength in the left lower extremity was 5/5, and his muscle strength in the right lower extremity

was at least 4/5. Plaintiff's gait was described as normal. (A.R. 342.) Dr. Quinones prescribed Percocet and epidural steroid injections (A.R. 342.)

On November 19, 2012, Plaintiff reported that the steroid injection had improved his condition slightly, but Dr. Quinones noted that he still complained of axial pain. (A.R. 333.) Dr. Quinones also advised Plaintiff to continue taking Percocet, and on December 4, 2012, Plaintiff underwent a right L3-L4 medial branch block and L5 dorsal ramus block, which he claimed relieved his pain by 70% for one week. (A.R. 331; 334.) On December 17, 2012, Dr. Quinones recommended that Plaintiff undergo a lumbar radiofrequency ablation, but Plaintiff's insurance company initially denied the procedure. (A.R. 329; 332.)

During an examination on April 29, 2013, Plaintiff presented with limited range of motion, and back pain, but displayed a normal gait, full strength, intact sensation, and normal reflexes. (A.R. 329.) In addition, his straight leg raising test was negative. (A.R. 329.)

On October 7, 2013, following an appeal to his insurance company, Plaintiff underwent radiofrequency ablation (A.R. 436-383.)

On April 29, 2014, Dr. Rosenblum noted that Plaintiff had pain when extending the lumbosacral junction, but he exhibited no motor deficits and negative straight leg raising tests. (A.R. 421.) Based on his review of Plaintiff's recent MRI studies, Dr. Rosenblum also found "no obvious source for his left lateralizing symptomology." (A.R. 421.) Specifically, an MRI of Plaintiff's lumbar spine from April 22, 2014, showed "stable postsurgical change on the right at L2/L3" and "stable central and slightly left paracentral disc herniation at Ll/L2," with "no other significant abnormalities." (A.R. 366.)

On June 4, 2014, Plaintiff attended a neurological consultation with Paul M. Kostoulakos, D.O. (A.R. 354-56.) Dr. Kostoulakos reported that Plaintiff was in no "acute distress" and that he

4

had normal strength in his upper and lower extremities, diminished deep tendon reflexes in the right patella and the bilateral Achilles' tendons, and intact sensation. (A.R. 355.). Specifically, Plaintiff was able to toe walk, heel walk, and tandem walk "without difficulty." (A.R. 355.) While Dr. Kostoulakos prescribed Lyrica and a Medrol Dosepak, and requested an EMG of Plaintiff's bilateral lower extremities, the record does not contain any EMG studies or any additional treatment records from Dr. Kostoulakos. (A.R. 356.)

On January 20, 2015, Dr. Rosenblum completed a medical source statement, which was the form consisting mostly of check boxes with small areas for comments that was considered by Judge McNulty prior to remand.[2] Dr. Rosenblum opined that Plaintiff was restricted to sitting 2-4 hours per day and standing/walking 3 hours, with alternating positions every 45 minutes to alleviate discomfort. (A.R. 357.) He further opined that Plaintiff could rarely lift 20 pounds, occasionally lift 10 pounds, and frequently lift less than 10 pounds. With respect to pushing and pulling, Dr. Rosenblum stated that Plaintiff could frequently use his upper extremities for pushing and pulling, but he could only rarely use his lower extremities for such activity. (A.R. 357-58.) Dr. Rosenbaum further stated that Plaintiff's pain or other symptoms would frequently be severe enough to interfere with the attention and concentration needed to perform even simple work tasks. (A.R. 358.) Finally, he found that Plaintiff would likely be absent from work four days or more per month due to his impairments or treatment for his ailments. (A.R. 358.)

> ii.   *Mental Impairments*

As referenced above, from September 2012 to February 2014, Plaintiff sought treatment from Dr. Quinones for the injuries he sustained in the car accident. Dr. Quinones' medical report,

---

[2]     On July 26, 2018, three years after the end of the relevant period, Dr. Rosenblum wrote a letter, stating that his medical source statement was based on Plaintiff's last office visit. According to Dr. Rosenblum, during that visit, Plaintiff "had persistent pain down the left leg with MRI evidence on an 4/21/2014 scan of a left sided L1-2 HNP" (A.R. 1000.)

dated July 13, 2015, found that in addition to Plaintiff's physical ailments, he complained of feeling desperate and depressed. Plaintiff was prescribed Cymbalta, which he testified that he took for only two months,[3] to assist with the pain and depression. (A.R. 52-53; 460-74.) At some point, Plaintiff was also prescribed Ambien for insomnia.

In August 2013 and May 2014, Plaintiff underwent pain management psychological examinations for his back injury. At the August 2013 examination, Plaintiff complained that he had significant daily depression, a loss of interest in normal activities, and stated that he "can't get out of bed." (A.R. 448.) He also explained that he has weekly "distressing or intrusive thoughts" about his car accident, which had impaired his ability to sleep. (*Id.*) Plaintiff further stated that since his car accident, he has reduced energy level/easy fatiguability, emotional appetite with a 25 pound weight gain, significantly reduced sex drive and sexual activity, impaired stress tolerance, and significant somatic fears and focus. (A.R. 448-49.) Following the examination, he was diagnosed with adjustment disorder with depressed mood and post-traumatic stress disorder (PTSD). (A.R. 450; 455.) According to Plaintiff's mental status examinations, however, he was deemed well oriented and cooperative, his thought processes were normal, and he had no unusual behaviors or signs of impaired cognition. (A.R. 351; 355; 414; 449.) Plaintiff also reported no problems with memory, concentration, or following instructions. (A.R. 208.)

### B.   <u>Review of Testimonial Evidence</u>[4]

At the March Hearing, Plaintiff testified that in the last fifteen years he worked as a mixer at a bakery, a manufacturer, and as a machine assembler. (A.R. 46-49.) Plaintiff explained that he

---

[3]       The record suggests that Plaintiff stop taking the medication because his insurance provider would not cover the cost of the drug.

[4]       As mentioned above, hearings were held on March 6, 2015 and July 13, 2018. At the July Hearing, the ALJ did not take any witness testimony. Rather, the July Hearing focused solely on Dr. Rosenblum's finding that Plaintiff would be absent from work for four days or more per month.

left his most recent job, as an assembler, because of his injured back. (A.R. 49.) He explained that his highest level of education was the ninth grade in Puerto Rico, before he arrived in the United States at 17 years old. (A.R. 60-61.) Plaintiff testified that while he can understand some English, he cannot read or write in English. (A.R.61.)

      Specific to his back condition, Plaintiff testified regarding his medical treatment and the medications he had taken in attempt to control the pain. (A.R. 50-54.) Plaintiff testified that the pain exists in his entire back and radiates into his left leg. (A.R. 56.) He stated that his leg will become numb and sometimes loses strength. (A.R. 57.) As for general day to day activities, Plaintiff testified that he has trouble using the stairs, but that he is able to shower and use the bathroom. (A.R. 55) He also testified that has difficulty bending and tying his shoes and can only sit for about 10 to 15 minutes. (A.R. 58.) Specifically, when sitting, Plaintiff explained that he needs to move in his chair to find a comfortable position. (A.R. 58.) As for standing, he testified that he could do so for about 10 to 15 minutes, but then he must sit down. (A.R. 59.) Plaintiff also testified that he could move a gallon of milk from one place to another, but he could not carry it. (*Id.*) When asked if he has "any other pain or troubles," Plaintiff indicated that his neck is sometimes painful, but not like the lower back. (A.R. 57.)

      In addition to Plaintiff, a Vocational Expert ("VE") also provided testimony at the March Hearing. The ALJ asked the VE to consider a person of Plaintiff's age, education and work background, at a light exertional level with the limitation of sitting up to four hours within an eight hour day and standing and walking up to four hours in an eight-hour day, who can sit and stand at will, but cannot use ladders, scaffolds, heights, heavy machinery, stooping and only occasional crawling, crouching, kneeling, stairs, ramps and no exposure to temperature extremes. (A.R. 61-62.) The VE testified that such an individual could not perform Plaintiff's previous work. (A.R.

62.) When asked, however, if any other jobs existed in the national economy that the individual could perform, the VE testified that the person would be capable of performing the representative, unskilled light jobs of envelope sealing machine operator, bottle packer, and paper pattern folder, comprising hundreds of thousands of jobs in the national economy (A.R. 62-63). As a follow-up question, Plaintiff's counsel asked the VE about the minimum number of allowed absences at the jobs identified by the VE. (A.R. 66-67.) In response, the VE testified that the individual would be entitled to one absence per month, and that no jobs would exist in the national economy should the person require more monthly absences. (A.R. 66-67.)

     **C.**    **ALJ Decision**

On November 7, 2018, the ALJ issued a written decision, following remand, examining whether Plaintiff satisfied his burden of demonstrating disability under the standard five-step sequential evaluation process. (A.R. 500-509.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 30, 2011, the alleged onset date of disability. (A.R. 503.) At step two, the ALJ found that Plaintiff's lumbar disc herniations status post-lumbar discectomy and obesity were severe impairments, but determined that Plaintiff's mental impairments, including adjustment disorder, depressed mood, and PTSD, were non-severe. (*Id.*)

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (A.R. 504.) Specifically, the ALJ considered Listings 1.02, major dysfunction of a joint(s) and 1.04, disorders of the spine. Although there are no listing criteria specific to evaluating obesity, SSR19-2p states that, "functional limitations caused by the MDI of obesity, either alone or in combination with another impairment(s), may medically equal a listing."

(*Id.*) However, here, the ALJ determined that obesity in combination with the Plaintiff's other impairments has not resulted in functional limitations that medically equal the severity of a listing. (*Id.*) As to Listings 1.02 and 1.04, the ALJ found that Plaintiff's conditions did not meet major dysfunction of a joint(s) or disorders of the spine, because the record does not establish evidence of nerve root compression, spinal arachnoiditis, pseudoclaudication, or an inability to ambulate effectively or perform fine/gross movements effectively within the meaning of 1.00B2b and 1.00B2c. (*Id.*)

At step four, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform "less than the full range of light work." (*Id.*) Specifically, the ALJ found that:

> [d]uring an eight-hour workday, the claimant can sit for up to four hours and stand/walk for up to four hours, with the ability to change positions at will. He cannot climb ladders or scaffolds or stoop. He cannot have exposure to heights or heavy machinery. He can occasionally crawl, crouch, kneel, and climb stairs or ramps. He should have no exposure to temperature extremes.

(*Id.*) Given Plaintiff's RFC, the ALJ found that he could not perform his past relevant work as a dough mixer or machine assembler. (A.R. 507-08.)

However, at step five, ALJ determined that given Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (A.R. 508.) Specifically, the ALJ found that the occupations of envelope sealing machine operator, bottle packer, and paper pattern folder exist in "significant numbers" in the national economy. (A.R. 508-09.) With respect to Dr. Rosenblum's "Medical Source Statement of Ability to Do Work–Related Activities," the ALJ gave substantial weight to Dr. Rosenblum's assessment of Plaintiff's exertional and hazard limitations; however, she found that he "somewhat overstate[d] the claimant's lifting/carry and standing/walking restrictions." (A.R. 506.) Additionally, based on her findings that Plaintiff received relatively conservative treatment for his

pain, never needed hospitalization or surgical intervention, and testing did not demonstrate nerve root involvement or any gait abnormalities, the ALJ also gave little weight to Dr. Rosenblum's opinion that Plaintiff required four absences per month, suffered from concentration deficits, and would need unscheduled breaks and off-task time. (A.R. 506.) In sum, the ALJ concluded that Plaintiff had not been under a disability as defined in the Social Security Act, from November 30, 2011, through May 26, 2015.

## II.   <u>STANDARD OF REVIEW</u>

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999) (internal quotations and citations omitted). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924 (1993). Accordingly, even if there

is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. *See* 42 U.S.C. § 423(c). Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." *Id.* § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. *Id.* § 1382c(a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See id.* § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. *Id.* § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities

and aptitudes necessary to do most jobs." *Id.* § 404.1522(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* § 404.1522(b)(1). A claimant who does not have a severe impairment is not considered disabled. *Id.* at § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). *Id.* § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id.* § 404.1520(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See id.* § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186. If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the RFC to perform his or her past relevant work. 20 C.F.R. § 404.1520(e); *Bowen*, 482 U.S. at 141.

If the claimant can perform past relevant work, the claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482 U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. *Plummer*, 186 F.3d at 428. Finally, if it is determined that the claimant is no longer able to perform his or her past relevant

work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." *Bowen*, 482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428. This step requires the ALJ to consider the claimant's RFC, age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant can perform work and not disabled. *Id.*

## III.   PLAINTIFF'S CLAIM ON APPEAL

On appeal, Plaintiff argues that (1) the ALJ improperly evaluated the medical evidence in the record, and (2) that the RFC finding was flawed. I will address each of Defendant's arguments, in turn.

### A.   The ALJ's Evaluation of the Medical Evidence

First, Plaintiff argues that the ALJ did not properly evaluate the medical evidence in the record. (Pl. Mov. Br., 20-39.) Namely, Plaintiff takes issue with the ALJ's finding that although he had certain severe impairments, such as lumbar disc herniations, status post lumbar discectomy, and obesity, Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.* at 24.)  In this connection, Plaintiff argues that the ALJ incorrectly found that he did not meet Listing 1.04, did not sufficiently consider his obesity, and did not evaluate Plaintiff's subjective complaints. (Id. at 24-27.) In addition, Plaintiff challenges the ALJ's finding that his mental impairments were non-severe, arguing that the ALJ wrongly found that he did not seek any counseling. (*Id.* at 21.) More specifically, while Plaintiff acknowledges that his "main limitation" is physical, he also claims that the "severity of his physical ailments led to his mental impairments," including his daily depression, agitated and anxious mood, mood dysregulation,

loss of interest in pleasurable activities, and psychosocial withdrawal and hopelessness and helplessness. (*Id.* at 22.)

### 1. Physical Impairments

I begin with the ALJ's consideration and evaluation of Plaintiff's physical impairments. As a threshold matter, Plaintiff argues that substantial evidence does not support the ALJ's evaluation of Dr. Rosenblum's opinion. (Pl. Mov. Br., 28-31.) In this regard, Plaintiff claims that his medical records support Dr. Rosenblum's opinion that Plaintiff would likely be absent from work four days per month, has concentration deficits, and would require unscheduled breaks and off-task time. (*Id.*) I disagree.

It is the ALJ's duty to evaluate medical opinions. 20 C.F.R. § 404.1527. When analyzing a medical opinion for claims filed before March 27, 2017,[5] the ALJ cannot reject a treating physician's opinion on the basis of speculation or lay opinion, and may only outrightly reject a treating physician's opinion on the basis of contradictory medical evidence. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). But, even though greater weight should be afforded to the findings of a treating physician, rather than those of a consulting physician, a treating physician's conclusion that a plaintiff is disabled or unable to work is not dispositive. *Adorno v. Shalala*, 40 F.3d 43, 47-48 (3d Cir. 1994). Instead, the ALJ must weigh the relative worth of a treating physician's report against the reports of other physicians who have examined the patient. *Id.* at 48. If a treating physician's opinion conflicts with the medical record, the ALJ may accord that opinion less weight, or even reject it outright, so long as a reasonable explanation is given. *Morales*, 225 F.3d at 317; *Ramos v. Colvin*, No. 14-3971, 2016 WL 1270759, at *5 (D.N.J. Mar. 31, 2016) ("An

---

[5]     As noted by Defendant, because Plaintiff applied for benefits prior to March 27, 2017, the new regulations pertaining to the evaluation of medical opinions do not apply to this case. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)).

ALJ can reject a treating physician's opinion ... where the opinion is ... inconsistent with other substantial evidence of record." (citation and internal quotation marks omitted)). Ultimately, it is within the province of the ALJ to decide which physician to credit, but the task must be performed by considering all the evidence. *Plummer*, 186 F.3d at 429.

Here, in compliance with the district court's remand order, the ALJ fully evaluated Dr. Rosenblum's opinion and explained her findings based on all the medical evidence in the record. (A.R. 505-06.) Specifically, the ALJ's decision accurately summarized Dr. Rosenblum's opinion, explaining that according to Dr. Rosenblum, Plaintiff could sit for two to four hours and stand/walk for three hours with the ability to alternate positions every forty-five minutes. (A.R. 505.) She also noted Dr. Rosenblum's opinion that Plaintiff could lift up to twenty pounds on a "rare basis," lift up to ten pounds on an "occasional basis," and lift less than ten pounds on a "frequent basis." (A.R. 505.) Finally, with respect to Plaintiff's pain, the ALJ highlighted Dr. Rosenblum's belief that it would "frequently interfere with his ability to sustain concentration for even simple tasks," that he would "need unscheduled breaks every 20 minutes," and that he would "require at least four absences per month." (A.R. 505.) Giving substantial weight to Dr. Rosenblum's assessment of Plaintiff's exertional and hazard limitations, the ALJ reasonably determined that restricting Plaintiff from prolonged sitting, standing, and walking was consistent with Dr. Rosenblum's progress notes. (A.R. 506.) In that regard, she explained that "Dr. Rosenblum is a treating source who had the opportunity to observe the claimant's condition over an extended period." (A.R. 506.) However, as it pertains to Plaintiff's absenteeism, concentration deficits, unscheduled breaks, and off-task time, the ALJ accorded little weight to those portions of Dr. Rosenblum's opinion. She reasonably explained that, in connection with these findings, Dr. Rosenblum merely "checked off-boxes to denote these limitations and did [not] provide supporting explanations." (A.R. 506); *see*

20 C.F.R. § 404.1527(c)(3) (stating that more weight will be given to opinions that are supported with relevant evidence, particularly medical signs and laboratory findings). In addition, the ALJ confirmed that while she considered a supplemental letter from Dr. Rosenblum, dated July 2018, explaining that the basis for this portion of his opinion was Plaintiff's persistent pain and the MRIs indicative of herniated discs, those justifications do not directly speak to off-task time or absenteeism. (A.R. 506; 1000.) Furthermore, the ALJ stressed that "Dr. Rosenblum's treatment notes do not document findings or claimant complaints that would lead to the conclusion that the claimant would require frequent absences, frequent breaks, or off-task time." (A.R. 506). Rather, "[w]hile the claimant reported ongoing pain," the ALJ commented that "his conservative treatment and lack of neurological deficits suggest that the severity of his symptoms would not frequently affect concentration or necessitate the unscheduled breaks/frequent absences." (A.R. 506.) Based on these reasons, I find the ALJ appropriately considered all medical evidence in connection with her evaluation of Dr. Rosenblum's opinion.

Next, Plaintiff asserts that the ALJ erred at step three in finding that Plaintiff did not meet Listing 1.04. (Pl. Mov. Br., 24.) As a general principle, an ALJ is required to set forth the reasons for her decision, and a bare conclusory statement that an impairment does not match, or is not equivalent to, a listed impairment is insufficient. *Burnett v. Commissioner of Social Security Administration*, 220 F.3d 112, 119–20 (3d Cir. 2000). An ALJ is not required, however, "to use particular language or adhere to a particular format in conducting [her] analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 504–05. An ALJ's step three analysis is proper when the "decision, read as a whole, illustrates that the ALJ considered the appropriate

factors in reaching the conclusion that" a claimant does not meet the requirements for any listing.

*Id.*

> To meet Listing 1.04, Plaintiff must have:
>
> A disorder of the spine (*e.g.*, herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A.   Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B.   Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C.   Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R., Pt 404, Subpt. P, App. 1, §1.04. In order for an impairment to match a listing, a claimant

must show that the impairment meets " 'all of the specified medical criteria. An impairment that

manifests only some of those criteria, no matter how severely, does not qualify.' " *Jones*, 364 F.3d

at 504 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original)). The burden

is on Plaintiff to demonstrate that his impairments meet the listings. *Rutherford v. Barnhart*, 399

F.3d 546, 551 (3d Cir. 2005) (explaining that in "the first four steps the burden is on the claimant");

*id.* ("If the claimant satisfies step 3, she is considered *per se* disabled.").

Here, the ALJ concluded that Plaintiff did not meet the requirements for Listing 1.04

because the record did not include any evidence of nerve root compression, spinal arachnoiditis,

pseudoclaudication, or an inability to ambulate effectively. (A.R. 504.) On appeal, Plaintiff

challenges only the ALJ's finding that the evidence did not show nerve root compression. (Pl.

Mov. Br., 24-25.) In that regard, Plaintiff relies on an MRI study performed in April 2012, which simply showed "a minimal eccentric bulging [at L4-L5] to the left within the left proximal foramen" that "perhaps minimally compresses the exiting left L5 nerve root." (A.R. 252-58.) However, based on the inclusion of the word "perhaps," I find that these April 2012 results are inconclusive as to nerve root compression for purposes of meeting Listing 1.04. Indeed, while Plaintiff provides no further medical evidence or expert opinion to demonstrate that the April 2012 MRI definitively showed nerve root compression, I also emphasize that substantial evidence exists to the contrary. For example, later MRI studies, performed in April 2014, conclusively showed no evidence of nerve root compression—a fact that Plaintiff does not refute. (A.R. 366; 506.) Moreover, as the ALJ noted, numerous straight leg raising tests performed on Plaintiff by his treating physicians were negative. (A.R. 327-29; 342-45; 421; 428-29; 431-33; 440-41; 444.) The straight leg raising test is designed to detect nerve root pressure, tension, or irritation of the sciatic nerve, and therefore, a positive result is an important sign of nerve root pressure produced by disc herniation. *See* Andersson and McNeil, *Lumbar Spine Syndromes* 78-79 (Springer-Verlag Wein, 1989). Accordingly, because Plaintiff failed to prove that he met all the criteria of Listing 1.04, substantial evidence supports the ALJ's finding at step three.

Plaintiff also argues that the ALJ did not properly consider his obesity at step three. Specifically, Plaintiff argues that the ALJ merely states that his obesity was adequately considered, singularly and in combination with his underlying impairments. According to Plaintiff, the ALJ's conclusory statement does not provide proper analysis such that this Court can perform a meaningful review.

In *Diaz v. Comm'r Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009), the Third Circuit explained that "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in

combination with h[is] impairments, on h[is] workplace function at step three and at every subsequent step." Meaningful review is more than a "bare conclusion" or "conclusory statement." *Burnett*, 220 F.3d at 119. But meaningful review does not require the use of particular language or a particular format; it requires sufficient development of the record and explanation of the ALJ's findings. *Jones*, 364 F.3d at 505. Here, while it is true that the ALJ's analysis of Plaintiff's obesity was slightly truncated, she nonetheless explained that "SSR 02-1p Obesity was adequately considered, singularly and in combination with the claimant's underlying impairments." (A.R. 504.) Indeed, when formulating Plaintiff's RFC, the ALJ accounted for any functional limitations stemming from Plaintiff's obesity by limiting the duration that he could sit or stand; finding that he could not climb ladders, ropes, or scaffolds; and limiting him to no more than occasional crawling, crouching, kneeling, and climbing stairs or ramp. (A.R. 504-07.) Thus, I find the ALJ's discussion provides meaningful review for purposes of this appeal.

Further, even if the ALJ's discussion of Plaintiff's obesity was too scant for meaningful review, I find that remand is inappropriate because Plaintiff fails to specify how his obesity, either singularly or in conjunction with his other impairments, impact his ability to work. *Carter v. Comm'r of Soc. Sec.*, No. 18-3284, 2020 WL 836735, at * 3 (3d Cir. Feb. 20, 2020). Harmless error review is applicable to administrative appeals, and it is Plaintiff, as the party challenging the agency's determination, that bears the burden of showing harmfulness. *Holloman v. Comm'r Soc. Sec.*, 639 Fed. Appx. 810, 814 (3d Cir. 2016) (citation omitted); *see also Rutherford*, 399 F.3d at 553. That means "Plaintiff must point to specific evidence and explain how he might have prevailed at step three or step four if the ALJ had more thoroughly analyzed his obesity." *Andres F. v. Comm'r of Soc. Sec.*, No. 19-19527, 2022 WL 769972, at *6 (D.N.J. Mar. 14, 2022) (citing *Holloman*, 639 F. App'x at 814). "Nothing in *Diaz* alleviates Plaintiff from this burden." *Id.* Yet,

in the instant appeal, Plaintiff fails to point to any evidence to support his position, let alone evidence that requires a different result at step three. Instead, Plaintiff argues merely that the ALJ's findings as to obesity "do[] not reach the level of discussion required by SSR 19-2p and requires a remand for a full discussion of the analysis so as to provide for a meaningful review by the Court." (Pl. Reply, 4.) This is insufficient. *See Carter*, No. 18-3284, 2020 WL 836735 at * 3 (finding remand to reconsider the plaintiff's combined impairments, including obesity, inappropriate because she did not "point to any medical evidence that her impairments, determinable or not, limit her ability to perform work activities"); *Santini v. Comm'r of Soc. Sec.*, 413 F. App'x 517, 520 (3d Cir. 2011) (finding the ALJ's consideration of obesity sufficient where the claimant did not provide evidence "indicating that her obesity ha[d] a significant effect on her functional capacity").

Lastly with respect to his physical impairments, Plaintiff claims that the ALJ did not sufficiently consider his subjective complaints. I find, however, that such an argument is unfounded. A claimant's subjective symptoms must be corroborated by objective medical evidence; *i.e.*, evidence of a medically determinable impairment that can reasonably be expected to produce the claimant's underlying symptoms. *See Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 2011) (citing 20 C.F.R. § 404.1529). The most recent Social Security Ruling within this context, SSR 16-3p, 2016 WL 1119029, effective March 16, 2016, describes a two-step process that ALJs are required to follow in evaluating a claimant's statements about symptoms. SSR 16-3p, 2016 WL 1119029.

First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2016 WL 1119029 at *3. "Second, once an underlying

20

physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities ..." *Id.* at *2. If the ALJ finds that the objective medical evidence does not substantiate the claimant's testimony about his or her symptoms, then the ALJ is required to make a determination on the basis of the entire record by considering: (1) The claimant's daily activities; (2) the location, duration, frequency and intensity of the claimant's pain or other symptoms; (3) precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures the claimant uses or has used to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c)(3)(i)-(vii).

Here, the ALJ properly considered Plaintiff's subjective complaints, finding that although Plaintiff's "medically determinable impairments could reasonably be expected to cause some of [his] alleged symptoms," Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (A.R. 505). In so finding, the ALJ reasonably highlighted that despite MRIs in 2012 and 2014, which revealed multi-level lumbar herniations and post-surgical changes, Plaintiff's treatment was more conservative. (A.R. 506.) Indeed, the ALJ expressly noted that Plaintiff never required hospitalization, surgical intervention, or any other emergency treatment.

(A.R. 506.) Rather, he received only injections, a nerve block, physical therapy,[6] and medication management. (A.R. 506.) Additionally, although Plaintiff claimed that he required use of a cane, the examinations performed by Plaintiff's treating physicians overwhelmingly demonstrated no gait abnormalities or, as discussed *supra*, nerve root compression. Finally, Plaintiff's own testimony demonstrates his ability to attend to his personal care, shop in stores with assistance from his son, perform light cleaning tasks, prepare simple meals, and drive. (A.R. 203-10.) As such, in light of Plaintiff's lack of corroborating evidence regarding the severity and intensity of his pain, and the thorough analysis of the total medical record, I find that the ALJ's decision to discount Plaintiff's subjective complaints was based on substantial evidence.

### 2. Mental Impairments

Turning to Plaintiff's mental impairments, I consider whether the ALJ erred in finding those impairments to be mild. An impairment or combination of impairments is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). Basic work activities are defined in the regulations as the abilities or aptitudes necessary to do most jobs. 20 C.F.R. § 404.1521(b). Examples of these abilities include mental functions such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. *Id.* An impairment or combination of impairments is not severe when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to perform basic work activities. SSR 85-28, 1985 WL 56856, at *3. In evaluating the severity of

---

[6]      I also note that as to Plaintiff's physical therapy regimen, the ALJ stressed that Plaintiff's medical records do not fully support his contention that he performed physical therapy four times per week. (A.R. 506.)

mental impairments, the ALJ must first determine the degree of functional loss in four areas considered essential to the ability to work: (1) understanding, remembering, and applying information; (2) interacting with others; (3) the ability to concentrate, persist, or maintain pace; and (4) adapting or managing oneself. *See* 20 C.F.R. § 404.1520a(c)(3). These areas are rated on the following five point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). If a claimant's degree of limitation in these areas is rated as "none" or "mild," the Commissioner will generally find that the claimant's impairment is not "severe." 20 C.F.R. § 404.1520a(d)(1).

Here, I find that substantial evidence supports the ALJ's finding that Plaintiff's mental impairments were mild, and therefore, non-severe. As a threshold matter, Plaintiff's disability application did not identify his depressed mood or PTSD as disabling impairments. Further, the ALJ's decision states that she considered the four broad areas of mental functioning, acknowledging that Plaintiff was diagnosed with adjudgment disorder with depressed mood and PTSD. However, she also explained, and the Court confirms, that the treatment records provided in connection with Plaintiff's mental impairments are scant. Although the ALJ explained that psychiatric evaluations performed in August 2013 and May 2014, indicate that Plaintiff suffered from myriad of mental health related ailments (including disturbed sleep, anxiety, depression, anger issues, loss of interest, social withdrawal, hopelessness, stress intolerance, and diminished energy), the record lacks any evidence that these complaints directly impacted his ability to work. In that regard, the Court emphasizes the ALJ's finding that during the relevant period, Plaintiff never sought specialized mental health treatment, including counseling or therapy, nor was he ever hospitalized to address these mental health concerns. (A.R. 503.) Rather, the ALJ noted that Plaintiff's activities during the relevant period "did not reflect any significant functional

limitations stemming from mental health issues." (A.R. 503.) For example, in an Adult Function Report dated June 2013, Plaintiff acknowledged the ability to prepare meals, dust, do laundry, shop for food in stores, drive, attend church, and socialize with friends. (A.R. 503; 203-10). Finally, and critically, Plaintiff reported no problems with memory, concentration, or following instructions. (A.R. 208).

To the extent that Plaintiff argues, on this appeal, that the ALJ incorrectly found that he did not receive counseling or therapy treatment for his mental impairments, the records that he relies on to support that position post-date May 26, 2015—the end of the relevant period in this case. (Pl. Mov. Br. 21-22.) Indeed, Plaintiff cites treatment records from the George J. Otlowski, Sr. Center for Mental Health Care which indicate that Plaintiff complained of difficulty sleeping and overeating, expressed a limited desire to interact with friends and did not participate in activities that he once enjoyed, and stated that he was bored at home. (A.R. 809-10.) Plaintiff further discussed the fear that he has since being in a car accident, explaining that he prefers to stay home where he will be safe. However, because those records stem from treatment on July 21, 2015, they are not probative of whether Plaintiff's mental health impairments were severe during the relevant period at issue. In that regard, the ALJ appropriately focused her review on medical records that related to Plaintiff's limitations during the relevant period. *Miller v. Comm'r of Soc. Sec.*, No. 20-3642, 2021 WL 3137439, at *2 (3d Cir. July 26, 2021) ("When a medical report does not address a claimant's condition during the relevant period, the report has 'little, if any, relevance to whether [the claimant] was disabled during that time.' ") (quoting *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014)).

B.    **The ALJ's RFC Finding**

Plaintiff also challenges the ALJ's RFC determination, arguing that the ALJ erred in finding that Plaintiff could perform light work because he could not perform "substantially all of the exertional and nonexertional functions required in work at that level" (Pl. Mov. Br., 32.)

A claimant's RFC is the most the claimant can do despite his or her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c), 416.927(e), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer*, 186 F.3d at 429. However, the ALJ need include only "credibly established" limitations. *Rutherford*, 399 F.3d at 554; *see also Zirnsak*, 777 F.3d at 615 (stating that the ALJ has discretion to choose whether to include "a limitation is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Here, the ALJ determined that Plaintiff had the RFC to perform "<u>less than the full range</u> of light work." (*Id.*) (Emphasis added). Specifically, as discussed *supra*, the ALJ found that:

> [d]uring an eight-hour workday, the claimant can sit for up to four hours and stand/walk for up to four hours, with the ability to change positions at will. He cannot climb ladders or scaffolds or stoop. He cannot have exposure to heights or heavy machinery. He can occasionally crawl, crouch, kneel, and climb stairs or ramps. He should have no exposure to temperature extremes.

Indeed, the ALJ reached this same RFC determination prior to remand, in her decision dated May 26, 2015, and when challenging that decision, Plaintiff made identical arguments to those made on appeal, here. Specifically, prior to remand, Plaintiff argued that the ALJ's RFC determination was incorrect because he cannot perform the exertional requirements of light work and the ALJ did not address his use of a cane when developing the RFC. *Id.* Reviewing the ALJ's second decision denying benefits, dated November 7, 2018, as well as the medical evidence in the record, I find that her RFC determination is correct for substantially the same reasons as set forth in *Soto I*. Specifically, with respect to the argument that Plaintiff cannot perform the exertional requirements of light work, the court in *Soto I* explained that the ALJ did not find that Mr. Soto could perform the full range of light work. No. 17-89, 2018 WL 355138, at *4-5. Rather, "Dr. Rosenblum assessed Mr. Soto's abilities, which were consistent with a certain range of light work," and the ALJ then found that "Mr. Soto could perform some light work jobs, given particular limitations, such as a four-hour limit on walking, a four-hour limit on standing, and the ability to change positions at will." *Id.* at *4. As the court noted, these findings were supported by substantial evidence from Plaintiff's treating physicians, and therefore, he would not be "required to meet the walking or standing demands of many light work jobs, but could meet the demands of others." *Id.* Also as it pertains to exertional requirements, Dr. Rosenblum determined that Plaintiff could frequently lift less than 10 pounds, occasionally lift 10 pounds, and rarely lift 20 pounds. *Id.* at *5. This was corroborated by Dr. Kostoulakos who also noted that Plaintiff had 5/5 strength in his upper and lower extremities. *Id.* As the court found, these assessments, when considered in tandem, are substantial evidence that Plaintiff could perform a certain range of light work.[7] *Id.*

---

[7]     Because substantial evidence supported the ALJ's finding that Plaintiff could perform the exertional requirements of light work, there is no merit to Plaintiff's contention that the ALJ should have found him disabled under the grid rules pertaining to sedentary exertion (Pl. Mov. Br., 37.) Rather, as the court in *Soto I* explained, because Plaintiff could perform the full range of sedentary work and more, but

As to Plaintiff's purported need for a cane, ample evidence exists in the record to support the ALJ's decision not to incorporate a cane limitation. Indeed, findings of normal gait without the use of a cane permeate the record, as well as consistent findings of negative straight leg raising, intact sensation, and full strength. *Id.* (citing A.R. 327; 345; 428–29; 431; 433; 440–41; 444.) In fact, in June 2014, Plaintiff walked without difficulty and performed a heel-toe walk, while in January 2015, Dr. Rosenblum did not indicate that Plaintiff requires a cane for ambulation. *Id.* (citing A.R. 355; 357–58.) Accordingly, I find that the ALJ's RFC determination is based on substantial evidence.

### C.      The Vocational Expert's Responses to Certain Hypothetical Questions

Finally, Plaintiff argues that the ALJ disregarded the VE's responses to certain hypothetical questions relating to an individuals' ability to perform work should he need to be off-task for 15% of the work day or miss four days of work per month. (Pl. Mov. Br., 40.) However, as discussed *supra*, the ALJ expressly found that those functional limitations were not supported by evidence in the record, and therefore, it is well-established that the ALJ was not required to credit such testimony. *See Craigie v. Bowen*, 835 F.2d 56, 57-58 (3d Cir. 1987) ("Inasmuch as the [ALJ] did not have to accept [Plaintiff]'s testimony, he did not have to credit ... expert testimony that was predicated upon it."). Rather, based on a hypothetical question that accurately reflected the limitations found by the ALJ to be supported by the evidence, the VE testified that Plaintiff would be capable of performing thousands of jobs in the national economy. (A.R. 62-63.)

---

could not perform the full range of light work, the ALJ appropriately consulted a VE to determine the impact of Plaintiff's limitations on his ability to perform substantial gainful activity (A.R. 587); *see* SSR 83-12, 1983 WL 31253, at *2 (stating that where an individual's exertional RFC does not coincide with the definitions of any one of the ranges of work as defined in 20 C.F.R. § 404.1567 of the regulations and the extent of erosion of the occupational base is not clear, the adjudicator will need to consult a vocational resource).

IV.  **CONCLUSION**

For the reasons set forth above, the ALJ's decision is **AFFIRMED**. An appropriate order shall follow.

Dated: October 4, 2022                                        /s/ Freda L. Wolfson
                                                              Freda L. Wolfson
                                                              U.S. Chief District Judge